# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MACHINE ZONE, INC.**, | Case No. 3:16-cv-01832-SI |
| Appellant, | (Bank. Ct. Case No. 16-32311-pcm11) |
| | (Adv. Pro. No. 16-03083-pcm) |
| v. | |
| **PEAK WEB, LLC**, | **OPINION AND ORDER** |
| Appellee. | |

Douglas R. Pahl, PERKINS COIE LLP, 1120 NW Couch Street, 10th Floor, Portland, OR 97209; Michael L. Bernstein, ARNOLD & PORTER LLP, 601 Massachusetts Avenue, NW, Washington, DC 20001. Of Attorneys for Appellant Machine Zone, Inc.

Timothy J. Conway and Ava Schoen, TONKON TORP LLP, 1600 Pioneer Tower, 888 SW Fifth Avenue, Portland, OR 97204; Oleg Elkhunovich, SUSMAN GODFREY LLP, 1901 Avenue of the Stars, Suite 950, Los Angeles, CA 90067; and Vineet Bhatia, SUSMAN GODFREY LLP, 1000 Louisiana, Suite 5100, Houston, TX 77002. Of Attorneys for Appellee Peak Web, LLC.

**Michael H. Simon, District Judge.**

This case comes to the district court as an appeal of an order from the United States Bankruptcy Court granting a motion for equitable remand of underlying civil litigation to state court, pursuant to 28 U.S.C. § 1452(b). Appellant Machine Zone, Inc. ("Machine Zone") and Appellee Peak Web, LLC ("Peak Web") originally filed competing lawsuits against each other in California state court, which the state court then consolidated into a single civil action. After Peak Web filed for voluntary bankruptcy, Machine Zone removed the consolidated civil action to

the Bankruptcy Court on the ground that the consolidated action was related to the bankruptcy

case, pursuant to 28 U.S.C. § 1452(a). Peak Web then filed a motion with the Bankruptcy Court

seeking, in the alternative, permissive abstention under 28 U.S.C. § 1334(c) or equitable remand

under 28 U.S.C. § 1452(b). The Bankruptcy Court granted the motion for equitable remand, and

Machine Zone appealed. Because Peak Web objected to having Machine Zone's appeal heard by

the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP"), this district court will hear the

appeal. In this appeal, the parties disagree about both the applicable standard of review and

whether the Bankruptcy Court correctly applied the relevant law. For the reasons that follow, the

Court holds that the Bankruptcy Court did not err in equitably remanding the proceeding to the

state court and affirms the decision below.

## STANDARDS

A district court reviews a bankruptcy court's "findings of fact for clear error and

conclusions of law and of mixed questions of law and fact *de novo*." *In re Icenhower*, 757 F.3d

1044, 1049 (9th Cir. 2014). "Matters committed to the bankruptcy court's discretion," including

equitable remand under 28 U.S.C. § 1452(b), "are reviewed for abuse of discretion." *Id.* "A court

abuses its discretion when it fails to identify and apply 'the correct legal rule to the relief

requested,' or if its application of the correct legal standard was '(1) illogical, (2) implausible,

or (3) without support in inferences that may be drawn from the facts in the record.'" *In re*

*Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (citation

omitted) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262-63 (9th Cir. 2009) (en banc));

*see also In re Taylor*, 599 F.3d 880, 887-88 (9th Cir. 2010) ("If the bankruptcy court did not

identify the correct legal rule, or its application of the correct legal standard to the facts was

illogical, implausible, or without support in inferences that may be drawn from the facts in the

record, then the bankruptcy court has abused its discretion.").

## BACKGROUND

Machine Zone is a developer of multiplayer, free-to-play online games, including *Game of War: Fire Age* and *Mobile Strike*. These games allows players to interact in real time with other players around the world. Although Machine Zone's games are free to download and play, Machine Zone generates revenues when players make in-game purchases during their participation in live, online gameplay. Peak Web, also doing business as "Peak Hosting," provides network infrastructure services. In March 2015, Machine Zone and Peak Web entered into a series of agreements under which Peak Web provided network hosting services for Machine Zone (collectively, the "Agreement"). On October 29, 2015, Machine Zone gave notice to Peak Web that Machine Zone was terminating the Agreement after Peak Web allegedly breached the Agreement.

On November 25, 2015, Machine Zone filed suit against Peak Web in the Superior Court for the County of Santa Clara, California ("Santa Clara Court").[1] In this lawsuit, Machine Zone asserted claims under California state law, including breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, negligent misrepresentation, and promissory estoppel. As relief, Machine Zone requested a minimum of $23 million in compensatory damages, plus punitive damages, a declaratory judgment that Machine Zone had properly terminated the Agreement, and rescission.

On December 3, 2015, Peak Web filed its own suit in the Santa Clara Court against Machine Zone and its subsidiary, Epic War.[2] In that lawsuit, Peak Web asserted claims under

---

[1] *Mach. Zone, Inc. v. Peak Web, LLC*, Case No. 1-15-cv-288498 (Cal. Super. Ct., Santa Clara Cty.).

[2] *Peak Web, LLC v. Mach. Zone, Inc., et al.*, Case No. 1-15-cv-288681 (Cal. Super. Ct., Santa Clara Cty.).

California state law, including misappropriation of trade secrets, breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, negligent misrepresentation, unfair competition, promissory estoppel, and conversion. As relief, Peak Web requested at least $93.7 million in compensatory damages, plus punitive damages, a declaratory judgment that Machine Zone and Epic War improperly terminated the Agreement, disgorgement of Machine Zone and Epic War's profits allegedly wrongfully obtained, and an injunction enjoining Machine Zone and Epic War's continued use of Peak Web's alleged confidential information and intellectual property.

The Santa Clara Court consolidated the two cases and assigned the consolidated action to one judge for all purposes in that court's "complex civil litigation department." As a result, the same judge would hear all pretrial motions, including discovery disputes, and would preside over the jury trial. Further, because the Santa Clara Court placed this case within the court's complex civil litigation department, any assigned trial date would not be postponed due to the higher priority that otherwise must be given to criminal cases. The Santa Clara Court denied Peak Web's motion for a temporary restraining order, but set a trial date for early March 2017, over Machine Zone's objection.

On June 13, 2016, Peak Web filed a petition for voluntary bankruptcy in the United States Bankruptcy Court for the District of Oregon (the "Bankruptcy Court"). Machine Zone then removed the consolidated civil action from the Santa Clara Court to the United States Bankruptcy Court for the Northern District of California. This resulted in the Santa Clara Court vacating the March 2017 trial date.

On July 8, 2016, the parties submitted a stipulation and proposed order to the Bankruptcy Court for the Northern District of California, requesting transfer of venue to the United States

District Court for the District of Oregon, pursuant to 28 U.S.C. § 1412. The parties also stipulated that any such transfer would be without prejudice to the rights of any party to file or oppose a motion to remand the consolidated action back to the Santa Clara Court. On July 15, 2016, the Northern District of California Bankruptcy Court transferred the removed litigation to the United States District Court for the District of Oregon, and on July 21, 2016, this District Court referred the consolidated litigation to the Bankruptcy Court.

Peak Web then moved the Bankruptcy Court, in the alternative, for permissive abstention pursuant to 28 U.S.C. § 1334(c) or to remand the consolidated action back to the Santa Clara Court pursuant to 28 U.S.C. § 1452(b). On August 24, 2016, the Bankruptcy Court issued its 16-page Memorandum Opinion setting forth its reasons for why Peak Web's motion for equitable remand under § 1452(b) should be granted ("Memorandum Opinion"). On August 29, 2016, the Bankruptcy Court issued its Order Remanding Proceeding to State Court ("Remand Order"). Machine Zone timely gave notice of its appeal. After Peak Web objected to Machine Zone's appeal being heard by the BAP, the appeal was transferred to this Court, pursuant to 28 U.S.C. § 158(c)(1)(B).

After the Bankruptcy Court issued its Remand Order, the Santa Clara Court reassumed jurisdiction over the consolidated civil action. On October 28, 2016, the assigned judge, the Hon. Peter H. Kirwan, held a case management conference and reset the trial date to July 10, 2017. The parties currently are engaged in pretrial discovery, including third-party discovery. At oral argument, the parties notified the Court that Judge Kirwin had rotated out of the complex civil litigation department and that Judge Brian C. Walsh has been assigned the litigation.

Additionally, Machine Zone recently substituted its trial counsel and so, at Machine Zone's request, during a case management conference held on January 16, 2017 Judge Walsh

vacated the July 10, 2017 trial date. Judge Walsh also rejected Machine Zone's proposal for a trial date in 2018 and indicated that he will likely set trial for the fall of 2017. Judge Walsh instructed the parties to prepare a list of the milestones that needed to be completed before trial and set a further case management conference for February 10, 2017. Judge Walsh also indicated that he would be available for regular status conferences, had availability on his docket because Judge Kirwin's docket of complex civil cases had been divided between two judges, and intended to continue expeditiously to move the consolidated case forward toward resolution.

## DISCUSSION

### A. Appropriate Standard of Review

Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(b) provides that the district courts "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the United States Bankruptcy Code], or arising in *or related to* cases under title 11" (emphasis added). 28 U.S.C. § 1334(b). Peak Web raised no objection to Machine Zone's removal of the underlying consolidated civil action from the Santa Clara Court to the United States Bankruptcy Court for the Northern District of California. Machine Zone moved to transfer the removed case to the District Court for the District of Oregon and eventually to the Bankruptcy Court for the District of Oregon on the grounds that the consolidated action was related to the pending bankruptcy case filed by Peak Web.

In support its motion for equitable remand, Peak Web relied on 28 U.S.C. § 1452(b), which provides, in relevant part: "The court to which such claim or cause of action is removed may remand such claim or cause of action *on any equitable ground*." (Emphasis added.) Thus,

the question addressed by the Bankruptcy Court was whether equitable remand was appropriate

in this case. Because the phrase "on any equitable ground" is not defined in the statute, courts

have established several tests or factors that are appropriate for a bankruptcy court to consider.[3]

In its Memorandum Opinion, the Bankruptcy Court considered the fourteen-factor test set

forth in *In re Cedar Funding, Inc.*, 419 B.R. 807 (B.A.P. 9th Cir. 2009) ("*Cedar Funding*

Factors"), plus three additional factors discussed in *In re Sequoia Vill., LLC*, 2012 WL 478926,

at *1 (Bankr. D. Or. Feb. 14, 2012) ("*Sequoia* Factors").[4] Neither party argues that the

Bankruptcy Court did not correctly identify the applicable legal standards for evaluating

equitable remand. The parties disagree, however, on the standard of review that this Court should

apply when reviewing the Bankruptcy Court's analysis of the seventeen factors, among other

things.

Machine Zone argues that the district court must conduct a *de novo* review of all

seventeen factors. Machine Zone does not dispute that deciding the question of equitable remand

and considering the seventeen factors is a matter left to the discretion of the Bankruptcy Court.

---

[3] Machine Zone relies on *In re Carriage House Condo. L.P.*, 415 B.R. 133, 143 (Bankr. E.D. Pa. 2009), for the proposition that equitable remand by a bankruptcy court "is an extraordinary and narrow exception" to the duty of a federal court to hear cases within its jurisdiction (quotation marks and citation omitted). That quote from *In re Carriage House*, however, addressed *abstention* and not *equitable remand*. The notion that equitable remand is only appropriate under extraordinary and narrow circumstances is contrary to the statutory text, which permits remand "on *any* equitable ground." 28 U.S.C. § 1452(b). It is also contrary to many cases decided within the Ninth Circuit, which have emphasized the unusually broad grant of authority in § 1452(b) and the fact that even one factor can be sufficient to support remand. *See, e.g., In re McCarthy*, 230 B.R. 414, 417 (B.A.P. 1999); *Fed. Home Loan Bank of Chicago v. Banc of Am. Sec. LLC*, 448 B.R. 517, 525 (C.D. Cal. 2011); *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 761 (Bankr. S.D. Cal. 2007).

[4] These are not necessarily the only appropriate factors that a court may consider. Some courts have consolidated these factors into a seven-factor test, *e.g., Senorx, Inc. v. Coudert Bros., LLP*, 2007 WL 1520966, at * 2-3 (N.D. Cal. May 24, 2007), or have only considered the fourteen factors of *Cedar Funding*. *See, e.g., In re AmericanWest Bancorporation*, 2011 WL 6013779, at *2 (Bankr. E.D. Wash. Dec. 2, 2011).

PAGE 7 – OPINION AND ORDER

Instead, Machine Zone argues that even though matters left the Bankruptcy Court's discretion are subject to review for abuse of discretion, the Bankruptcy Court's *identification* of the correct legal standard, *interpretation* of that standard, and *application* of that standard to the facts are all legal conclusions that require *de novo* review. Machine Zone misstates the standard of review for abuse of discretion.

In its en banc opinion in *United States v. Hinkson*, the Ninth Circuit adopted a two-part test to determine whether a court has abused its discretion. 585 F.3d at 1261-62. "[T]he first step of our abuse of discretion test is to determine *de novo* whether the trial court identified the correct legal rule to apply to the relief requested." *Id.* Failure to do so is an abuse of discretion. *Id.* at 1262. The second step is "to determine whether the trial court's *application* of the correct legal standard" was illogical, implausible, or without support in inferences that may be drawn from the record. *Id.* (emphasis added). Thus, the "application" of the correct legal rule to the facts is not reviewed *de novo*. *Id.*; *see also In re Roman Catholic Archbishop of Portland*, 661 F.3d at 423-24) (noting that a court abuses its discretion where its "its *application* of the correct legal standard" is illogical, implausible, or without support in inferences that may be drawn from the facts in the record) (emphasis added); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (same); *In re Taylor*, 599 F.3d at 887-88 (noting that a court abuses its discretion if "its *application of the correct legal standard to the facts* was illogical, implausible, or without support in inferences that may be drawn from the facts in the record" (emphasis added)); *In re Heers*, 529 B.R. 734, 740 (B.A.P. 9th Cir. 2015) ("Under the abuse of discretion standard, reversal is appropriate only where the bankruptcy court applied an incorrect legal rule, or where its *application of the law to the facts* was illogical, implausible or without support from inferences that may be drawn from the record." (emphasis added)).

PAGE 8 – OPINION AND ORDER

When, however, a court recites the correct legal standard but then misinterprets that legal standard or does not actually apply the recited legal standard, that constitutes a failure to apply the correct legal standard and is necessarily an abuse of discretion at "step one" of the *Hinkson* test. This is the situation in the cases cited by Machine Zone in support of its argument for a *de novo* review.

In *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003), relied upon by Machine Zone, the Ninth Circuit noted that the district court correctly identified the appropriate standard for granting a preliminary injunction. The Ninth Circuit found, however, that the district court improperly required a greater burden (namely, proof of actual harm and "concrete probability of irreparable harm") than was required under the correct standard (namely, "*probable* success on the merits and the *possibility* of irreparable harm"). *Id.* (emphasis in original). Thus, the Ninth Circuit held, "[u]nder these circumstances, the court's conclusion that Plaintiffs failed to show 'actual harm' or a 'concrete probability of irreparable harm' constitutes the application of an 'erroneous legal standard' and thus 'necessarily' an abuse of discretion." *Id.* at 1299 (citation omitted). In that case, the Ninth Circuit did not perform a *de novo* review of the factors, but only held that the district court abused its discretion by applying the wrong legal standard.

Machine Zone also relies upon *In re Excel Innovations, Inc.*, 502 F3d 1086 (9th Cir. 2007). In that case, the Ninth Circuit held that the bankruptcy court and the BAP "applied incorrect legal standards." *Id.* at 1096. The court then discussed the alternative findings by the two courts, which purported to apply the "usual" preliminary injunction standard. *Id.* at 1096-97. The Ninth Circuit noted that, concerning the very first factor that was supposed to be considered, "[t]he bankruptcy court did not consider that issue at all" and such a "failure to consider a critical

element of the injunction standard is reversible error." *Id.* at 1097. The BAP, however, did consider the first factor, but the Ninth Circuit held that the conclusion reached by the BAP was an abuse of discretion because "the record contains no evidence on which [the BAP] rationally could have based that decision." *Id.* (alteration in original). The Ninth Circuit then reviewed the other factors and found that there was no evidence in the record to support the lower court's inferences and findings. *Id.* at 1097-99. The Ninth Circuit reiterated that although the bankruptcy court had recited the correct legal standard, it had not applied that legal standard, and thus abused its discretion.

Notably, the opinions in both of these cases relied on by Machine Zone were decided before the Ninth Circuit issued its en banc opinion in *Hinkson*. Thus, the panels issuing those two decisions did not have the benefit of *Hinkson's* adoption of the two-part test for abuse of discretion. Regardless, these cases do not support the contention that this Court must perform a *de novo* review of the seventeen factors for equitable remand. Instead, the two pre-*Hinkson* cases merely found an abuse of discretion based on the lower courts not applying the correct legal standard, which is an abuse of discretion at "step one" of the *Hinkson* test. *See also In re Penrod*, 802 F.3d 1084, 1088 (9th Cir. 2015) (noting that although the bankruptcy court "correctly recognized" the law, it "denied Penrod's fee request based on a mistaken view of the law, which constitutes an abuse of discretion").

Accordingly, the Court reviews the Bankruptcy Court's interpretation of the *Cedar Funding* and *Sequoia* factors to ensure that the Bankruptcy Court did not merely recite the correct legal standard but then misinterpret it or fail actually to apply it. If, however, the Bankruptcy Court applied the correct legal standard, then the Court reviews that application

simply to ensure that it was not illogical, implausible, or without support in inferences that may be drawn from the factual record.

## B.  Bankruptcy Court's Application of the Seventeen Factors

### 1.  Unchallenged Factors

Machine Zone does not challenge the Bankruptcy Court's analysis of *Cedar Funding* factors 4, 5, 7, 8, 10, and 12, except generally to note that factors the Bankruptcy Court found to be neutral do not support remand. Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion in its evaluation of these factors.

### 2.  Effect of Neutral Factors

Machine Zone argues that factors the Bankruptcy Court found to be neutral actually support retaining jurisdiction because it is the burden on the party seeking remand to prove that remand is warranted, and neutral factors do not prove remand is warranted. Although Machine Zone is correct that factors found to be neutral do not support remand, they also do not support retaining jurisdiction. They are neutral in the sense that they do not weigh for or against remand—they are simply not considered or placed on the scale. Thus, if all seventeen factors were neutral, Peak Web would not have met its burden of showing that remand is warranted. Machine Zone, however, essentially urges that the Court place a factor found to be neutral on the side of the scale opposing remand. This is a misunderstanding of the concept of factor neutrality. Each factor that the Bankruptcy Court found to be neutral neither adds to nor detracts from the weight of the factors that the Bankruptcy Court found to support remand. They are simply neutral.

Moreover, § 1452(b) provides for remand "on any equitable ground." This affords "an unusually broad grant of authority." *Fed. Home Loan Bank of Chicago v. Banc of Am. Sec. LLC*, 448 B.R. 517, 525 (C.D. Cal. 2011) (quotation marks omitted); *see also In re McCarthy*, 230

B.R. 414, 417 (B.A.P. 1999) ("This 'any equitable ground' remand standard is an unusually broad grant of authority."). Accordingly, "any *one* of the relevant factors may provide a sufficient basis for equitable remand." *Fed. Home Loan Bank of Chicago*, 448 B.R. at 525 (quoting *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 761 (Bankr. S.D. Cal. 2007)) (emphasis added). Thus, the fact that several factors were found to be neutral does not undermine the Bankruptcy Court's conclusion that remand was appropriate in this case.

### 3.   Factor 1: Efficient Administration of Bankruptcy Estate

The first *Cedar Funding* factor is the effect or lack thereof on the efficient administration of the bankruptcy estate. The Bankruptcy Court found: (1) it is possible for this case to proceed on parallel tracks, with reorganization in the Bankruptcy Court and litigation in the Santa Clara Court; (2) although the outcome of the litigation will affect the amount of funds available to distribute to creditors, there is no evidence to contradict Peak Web's assertion that the Bankruptcy Court can confirm a plan without the underlying litigation having been completed; (3) there were no bankruptcy issues that needed to be resolved before the state law claims could be determined; (4) the reorganization effort is not dependent on resolution of the litigation; (5) if issues arose regarding voting rights, estimation of claims, and the like relating to plan confirmation, the Bankruptcy Court has summary procedures available to resolve those issues without waiting for liquidation of the claims in the litigation; and (6) even if resolution of the litigation was necessary for reorganization, the state court would provide a more prompt resolution. Thus, the Bankruptcy Court concluded that this factor weighed heavily in favor of remand.

Machine Zone argues that the Bankruptcy Court misinterpreted this factor by considering whether it was "possible" that the bankruptcy case could proceed on a parallel track with the consolidated lawsuit being heard in state court, instead of considering whether it would be "more

efficient." The Court disagrees that the Bankruptcy Court did not consider what would be most efficient. Machine Zone is correct that the Bankruptcy Court agreed with Peak Web's argument that it was possible for the two cases to proceed on parallel tracks. The Bankruptcy Court continued, however, to find that the estate could "be efficiently administered without first resolving the Machine Zone litigation." ECF 1 at 14-15.

The Bankruptcy Court directly addressed and rejected Machine Zone's argument that is would be "more efficient" to resolve this action in the Bankruptcy Court. The Bankruptcy Court noted that it often is more efficient for a bankruptcy court to control litigation that is critical to the reorganization effort and that litigation on two fronts can disrupt the reorganization process, but found that not to be the case with this litigation. The Bankruptcy Court also noted that the debtor wants to proceed in the Santa Clara Court, the forum in which both parties initially chose to litigate. That is the forum in which Machine Zone first chose to sue Peak Web. The Bankruptcy Court then discussed the fact that the Santa Clara Court had assigned the case to its complex civil litigation department, which promptly set a case schedule, including a trial date. The Bankruptcy Court concluded that "it is likely that the state court can provide prompt, efficient resolution of the litigation. To the extent the litigation is necessary to the reorganization, prompt resolution in state court will further rather than hinder that effort." *Id.* at 15. This conclusion is not illogical, implausible, or without support in the factual record.

Machine Zone also argues that the Bankruptcy Court's conclusion that it could confirm Peak Web's reorganization plan without the Machine Zone litigation first being decided was erroneous and relied solely on the unsubstantiated representation by Peak Web. The Bankruptcy Court, while recognizing that the litigation might make a difference to the total amount of funds available, found that no evidence contradicted Peak Web's assertion. The Bankruptcy Court also

noted that it had available to it summary proceedings, if needed, and that even if the outcome of the underlying litigation were necessary before a plan of reorganization could be confirmed, the underlying dispute would likely be more promptly resolved in state court. This was not an abuse of discretion.

The Bankruptcy Court did not misinterpret this factor or apply a different legal standard. The Bankruptcy Court's conclusion that remanding the case would not have a negative effect on the efficient administration of the bankruptcy estate and that this factor therefore heavily supported remand is not illogical, implausible, or unsupported by facts in the record. Indeed, after the Bankruptcy Court remanded the case, the Santa Clara Court moved promptly and set a trial date for July 10, 2017. It was only after Machine Zone substituted trial counsel that the Santa Clara Court vacated that trial date but nevertheless indicated its intent to commence trial in the fall of 2017.

If this case were to remain in the Bankruptcy Court, that court would be called upon to resolve discovery disputes and other pretrial motions. Both parties have indicated that they intend to file motions for summary judgment, among other pretrial motions. Because there is not full consent, the Bankruptcy Court's decision on pretrial motions may be subject to appeal to this Court. Further, only after the Bankruptcy Court resolves all pretrial motions will the case be transferred to this Court to set a trial date. Thus, it is unlikely that the federal courts could bring the parties' underlying dispute to resolution by trial any faster than the Santa Clara Court. As the Bankruptcy Court concluded, even if resolution of the underlying dispute were necessary before a plan of reorganization could be confirmed, that dispute likely will be more promptly resolved in state court under the current schedule. Accordingly, remand will provide a more efficient administration of the bankruptcy estate.

The cases cited by Machine Zone do not support a finding to the contrary. Machine Zone cites to *In re Newell*,[5] *In re Bavelis*,[6] and *In re Maria Vista Estates*[7] in support of its argument that the Bankruptcy Court erred in its conclusion. Key factors relied on by the court in *In re Newell*, however, in determining that it would be more efficient to resolve the underlying dispute in bankruptcy court were that: (1) the state court had repeatedly continued hearing the motion for summary judgment and would likely continue it again, whereas the bankruptcy court could immediately calendar the parties' motions; and (2) because of the rotating calendar in state court, numerous judges would hear the various motions instead of one judge. 424 B.R. at 738. Neither of those concerns apply here because, as noted by the Bankruptcy Court, the Santa Clara Court has assigned one judge in a specialized complex civil litigation court to handle the case, and the case has been moving toward resolution.

*In re Bavelis* involved a claim for fraudulent transfer, which is primarily based on the Bankruptcy Code and is a core proceeding. More importantly, the bankruptcy court had "developed a substantial learning curve" with respect to numerous transactions, including the transactions at issue in the case for which remand was sought. 453 B.R. at 875 (quotation marks omitted). The bankruptcy court in that case also already had handled several hearings and status conferences and had "become familiar with the parties and with the issues present." *Id.* at 870. The bankruptcy court found that it would be "inappropriate to shift the burden of adjudicating the instant proceeding" to another court. *Id.* at 875. Those concerns, however, are not present in

---

[5] 424 B.R. 730, 737-38 (Bankr. E.D. N.C. 2010).

[6] 453 B.R. 832, 870 (Bankr. SD. Ohio 2011).

[7] 2016 WL 1381769, at *12 (Bankr. C.D. Cal. Apr. 5, 2016).

this case. This litigation is not a core proceeding and does not involve issues with which the Bankruptcy Court has already become familiar.

Finally, *In re Maria Vista Estates*, involved a situation where the bankruptcy court had resolved numerous adversary proceedings in the administration of the estate and was "intimately familiar" with the issues. 2016 WL 1381769, at *12. The issue in the case for which remand was sought "turns on an interpretation of orders previously entered by [the bankruptcy] court." *Id.* The bankruptcy court had "issued several decisions that affect the same issues that are being put in controversy in this action" and noted that "[t]he parties are entitled to rely on the finality of those decisions and not have them undermined by conflicting outcomes in other proceedings." *Id.* Thus, the bankruptcy court in that case concluded that "'judicial economy, convenience, fairness and comity will sometimes best be served by the retention of jurisdiction by the federal court, particularly in instances where . . . the federal court has performed a substantial amount of legal analysis that would need to be repeated by the state court if the case were remanded.'" *Id.* (alteration in original) (quoting *Millar v. Bay Area Rapid Transit District*, 236 F. Supp. 2d 1110, 1116 (N.D. Cal. 2002)). The facts of this case are entirely distinguishable from the situation in *In re Maria Vista Estates*. Thus, the Bankruptcy Court did not abuse its discretion in evaluating the first *Cedar Funding* factor.

### 4. Factor 2: Extent to Which State Law Issues Predominate

The Bankruptcy Court found that this litigation is based entirely on state law and that no federal law or bankruptcy issues are involved. Thus, the Bankruptcy Court concluded that this factor weighs in favor of remand.

Machine Zone argues that this factor should have been given little, if any, weight, particularly because only straightforward state claims are at issue. To the contrary, courts have found this factor weighs in favor of remand and that a court may remand solely because

exclusively state law claims are at issue and no bankruptcy issues are involved, even when straightforward state law claims are at issue. *See In re AmericanWest Bancorporation*, 2011 WL 6013779, at *3 (Bankr. E.D. Wash. Dec. 2, 2011) (explaining that because "this adversary [proceeding] involves only state law issues . . . *this factor would ordinarily weigh heavily in favor of remand and in many cases would result in remand without further discussion*," but then concluding that because the litigation necessarily requires the deciding court to interpret and determine the effect of various bankruptcy court orders and procedures, "[d]ue to the unusual circumstances of this adversary, this factor weighs against remand") (emphasis added); *see also Hayden v. Wang*, 2013 WL 6021141, at *4 (N.D. Cal. Nov. 13, 2013) (finding this factor weighs in favor of remand where claim was for securities fraud under state law); *Hendricks v. Detroit Diesel Corp.*, 2009 WL 4282812, at *8 (N.D. Cal. Nov. 25, 2009) (finding this factor weighs in favor of remand where state law claims of negligence, strict liability, and false representation were at issue); *Bally Total Fitness Corp. v. Contra Costa Retail Ctr.*, 384 B.R. 566, 572 (Bankr. N.D. Cal. 2008) (finding this factor weighs in favor of remand of state law unlawful detainer action); *In re Cytodyn of N. M., Inc.*, 374 B.R. 733, 739 (Bankr. C.D. Cal. 2007) (finding this factor weighs "strongly in favor of remand" where "proceeding consists to an overwhelming degree of California state law issues," including fraud, violation of securities laws, interference with contract, and breach of contract); ECF 13 at 35-36 (Appellee's Br.) (citing additional cases).

Machine Zone also cites to cases where courts have decided not to remand a case where state law claims are present, where courts have found that this factor is "modest," and where courts have noted that federal courts are capable of adjudicating state law claims. ECF 10 at 30-31, ECF 14 at 18. The fact that a bankruptcy court is capable of adjudicating state law claims or may or may not consider this factor "modest" does not render the Bankruptcy Court's conclusion

in this case illogical, implausible, or without support in the factual record. The Bankruptcy Court did not abuse its discretion in finding that this factor weighs in favor of remand.

### 5.    Factor 3: Difficult or Unsettled Issues of State Law

The Bankruptcy Court concluded that it did not think that the *legal* issues raised in this litigation are particularly complex or novel. The Bankruptcy Court, however, went on to find that this factor favors remand because the case had the potential to become *factually* complex. Machine Zone correctly argues that this factor does not involve factual complexity, but instead asks only whether legal issues are complex or unsettled under state law such that the state court would be in a better position to resolve them. Peak Web responds that the seventeen factors are not exclusive and thus the Bankruptcy Court may consider other factors, such as factual complexity. The Bankruptcy Court, however, did not consider factual complexity as a separate factor, but looked to factual complexity in considering the factor of legal complexity. This was erroneous. The Bankruptcy Court misinterpreted this factor and thus applied an incorrect legal standard. Accordingly, the Bankruptcy Court abused its discretion in concluding that this specific factor favors remand.

### 6.    Factor 6: Degree of Relatedness or Remoteness to Main Bankruptcy Case

The Bankruptcy Court found that this case is not remote to the bankruptcy case because it involves significant monetary claims that may either result in a significant asset for the bankruptcy estate or a significant debt. The Bankruptcy Court also concluded that the case was not so interrelated to the bankruptcy case as to preclude remand. The Bankruptcy Court reiterated its earlier conclusion that the claims need not be resolved before plan confirmation and that there is no indication that confirmation is dependent on any particular outcome of the underlying litigation. The Court has already found that those conclusions by the Bankruptcy Court were not illogical, implausible, or without support the factual record.

PAGE 18 – OPINION AND ORDER

### 7. Factor 9: The Burden on the Bankruptcy Court's Docket

The Bankruptcy Court concluded that retaining the consolidated action would create a burden on its docket. The Bankruptcy Court noted that it is "very possible" that there will be significant matters that will take a significant amount of time. The Bankruptcy Court also noted that because there is not full consent, it would have to handle all of the discovery and other pretrial matters and then transfer the case to a district court judge for trial, who will then also have to become familiar with the parties, the case, and the issues afresh. The Bankruptcy Court further noted that the trade secrets claims will likely require evidence of details of technology that are outside the types of issues usually handled by the Bankruptcy Court. Although acknowledging that it is capable of resolving the disputes that likely will arise, the Bankruptcy Court concluded that its "role is ordinarily focused on issues arising under bankruptcy law and managing the reorganization process, not conducting complex litigation." ECF 1 at 18. The Bankruptcy Court did not abuse its discretion in concluding that this case would create a burden on the Bankruptcy Court's docket.

### 8. Factor 11: Right to Jury Trial

The Bankruptcy Court noted that both parties seek a jury trial and that there is not full consent, so the jury trial would have to take place in district court, thereby requiring two different courts and two different judges to advance the consolidated action to trial. The Bankruptcy Court noted, in contrast, that the Santa Clara Court will have one assigned judge handle the entire case from discovery through jury trial. The Bankruptcy Court found that this factor weighs in favor of remand. This was not illogical, implausible, or without support in the record. *See Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.*, 2010 WL 3662345, at *7 (W.D. Wash. Sept. 1, 2010) ("Courts have granted equitable remand solely on the basis of a party's entitlement to a jury trial when that party's action was not a 'core proceeding.'"); *see also*

ECF 13 at 43-44 (citing additional cases holding that the right to a jury trial is sufficient for, or at least strongly favors, remand when the action does not involve a core proceeding). Thus, the Bankruptcy Court did not abuse its discretion in reaching its conclusion regarding this factor.

**9.    Factor 13: Comity**

The Bankruptcy Court explained that "[c]omity implicates respect for the states and their laws and courts." The Bankruptcy Court noted that the case involved only California state law claims, but also observed that the Santa Clara Court had not yet invested a substantial amount of time and effort in the case and the parties had not yet engaged in discovery or significant motion practice. The Bankruptcy Court concluded, however, that the Santa Clara Court's familiarity with the case and the fact that there are no federal claims weighs in favor of remand. This was not illogical, implausible, or without support in the record. *See, e.g.*, *In re Roman Catholic Archbishop of Portland in Or.*, 338 B.R. 414, 422 (Bankr. D. Or. 2006) ("Comity weighs in favor of remand, because these claims turn largely on state law."). Thus, the Bankruptcy Court did not abuse its discretion in reaching its conclusion regarding this factor.

**10. Factor 14: Possibility of Prejudice to Other Parties in the Action**

The Bankruptcy Court noted that Machine Zone does not argue that it would be prejudiced by a remand. The Bankruptcy Court also observed that the parties' Agreement provides that California state law applies and the parties consent to the non-exclusive jurisdiction of the courts of Santa Clara County, at least for resolution of equitable disputes relating to confidentiality issues. The Bankruptcy Court was not persuaded by Machine Zone's argument that jurisdiction in the Santa Clara Court was not exclusive and applies only to equitable claims because both parties filed their respective complaints in Santa Clara County, thereby further demonstrating that neither party would be prejudiced by remand. The Bankruptcy Court further

noted that there are no other parties to the consolidated action that would be prejudiced. Thus, the Bankruptcy Court concluded that this factor favors remand.

Machine Zone argues that the Bankruptcy Court erred by failing to consider whether there may be prejudice to other creditors in the bankruptcy case. This factor, however, does not look at prejudice to other parties in the bankruptcy case generally, but only to other parties in the specific action for which remand is sought. At oral argument both parties agreed that there is wide discretion in considering remand, the *Cedar Funding* factors are not exclusive, and a court may consider prejudice to other parties outside of the specific litigation at issue in the remand motion, including creditors in the bankruptcy case. But the fact that a court has discretion to consider those interests does not mean that the Bankruptcy Court erred in evaluating this factor by not considering potential prejudice to the other creditors in the bankruptcy case.

Machine Zone also argues that there is no evidence that litigating in the Bankruptcy Court will prejudice either Machine Zone or Peak Web. Machine Zone, however, does not address the Bankruptcy Court's determination that neither party will be prejudiced by litigating in the Santa Clara Court or argue that the Bankruptcy Court's conclusion was inaccurate or illogical. When there is no prejudice in either venue, the Bankruptcy Court's conclusion that this factor supports remand is not illogical, implausible, or unsupported by reasonable inferences from the factual record.

### 11. *Sequoia* Factors: Judicial Economy

The Bankruptcy Court found the *Sequoia* factors of bifurcation and the possibility of inconsistent results do not apply and that the factor of judicial economy supports remand. The Bankruptcy Court stated that litigation in state court "is likely to be more efficient than litigating in federal court" because the state court has one judge handling the entire case (and on what appears to be an expedited basis), whereas in federal court there would be a bankruptcy judge for

all pretrial matters and a separate district judge to preside over the jury trial. The Bankruptcy Court also held that the state court is better suited to resolve factually technical state law claims and would likely resolve the underlying dispute more promptly than would the federal court.

The Bankruptcy Court rejected Machine Zone's argument that the Bankruptcy Court already has a substantial background concerning the litigation based on that court's familiarity with Peak Web's business and financial circumstances. The Bankruptcy Court concluded that it had relatively little familiarity with the specific issues raised in the underlying dispute alleging misappropriation of trade secrets, among other things. The Bankruptcy Court also reiterated that this is not a case where some claims need to remain in the Bankruptcy Court. Because all claims are based on state law and can be determined in state court, the Bankruptcy Court concluded that there is not a risk of "piecemeal litigation" or inconsistent results.

Machine Zone repeats its argument that the Bankruptcy Court will be required to determine issues relating to this litigation in order to confirm the plan and thus it is judicially inefficient to remand the case. Machine Zone adds that bifurcation and inconsistent results are a realistic concern. Machine Zone raises issues of estimation and voting as requiring adjudication by the Bankruptcy Court on the merits of the underlying dispute. The Bankruptcy Court, however, concluded that plan confirmation can proceed without resolving the merits of the underlying litigation and that bankruptcy-specific issues, such as estimation and voting, can be handled in a summary fashion if necessary. The Bankruptcy Court also found that the state court likely will more promptly resolve the underlying dispute, if in fact resolution of that dispute is necessary for plan confirmation. These conclusions by the Bankruptcy Court are not illogical, implausible, or unsupported by reasonable inferences from the factual record.

PAGE 22 – OPINION AND ORDER

### 12. The Bankruptcy Court's Conclusion

In considering the *Cedar Funding* factors, the Bankruptcy Court found four factors to be neutral, two factors to weigh against remand, and eight factors to support remand. In considering the *Sequoia* factors, the Bankruptcy Court found that one factor supported remand and two did not apply. Although the Bankruptcy Court abused its discretion in concluding that potential factual complexity resulted in *Cedar Funding* factor 3 weighing in favor of remand, this error was harmless. In summarizing its conclusion, the Bankruptcy Court expressly stated: "This is not a close call." The Bankruptcy Court identified the factors that it found to be most important, and the potential factual complexity of the case was not among them. Thus, the Court's conclusion that the Bankruptcy Court's analysis of a single factor was erroneous does not undermine the Bankruptcy Court's overall conclusion.

Machine Zone argues that in the Bankruptcy Court's conclusion, it erred in noting the importance of the fact that the debtor wishes to proceed in state court. The debtor's chosen forum is not a *Cedar Funding* factor. The Bankruptcy Court did, however, note this fact in the context of analyzing the ability to efficiently administer the bankruptcy estate and discussing potential prejudice to the non-removing party. Additionally, the *Cedar Funding* factors are not exclusive. Thus, the Bankruptcy Court did not err in discussing this factor as important to its decision to remand this case.

The Court concludes that the Bankruptcy Court did not abuse its discretion in analyzing the other seven *Cedar Funding* factors and the one *Sequoia Village* factor that the Bankruptcy Court found supported remand. As discussed above, § 1452(b) provides a broad grant of authority for equitable remand and even one factor may provide a sufficient basis. Moreover, Peak Web only needed to "establish by a preponderance of the evidence that . . . remand is

appropriate." *Brizzolara v. Fisher Pen Co.*, 158 B.R. 761, 769 (Bankr. N.D. Ill. 1993). Thus, the

Bankruptcy Court's decision to remand this case was not an abuse of discretion.

## CONCLUSION

The Bankruptcy Court did not abuse its discretion in remanding this case to the Superior

Court of California, County of Santa Clara. The Bankruptcy Court's decision is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 7th day of February, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge